IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY DOLBY, | CIVIL DIVISION |
| Plaintiff, | Case No. 1:21-CV-229 |
| v. | |
| LATROBE SPECIALTY METALS COMPANY LLC. t/d/b/a Carpenter Specialty Metals, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. **_Preliminary Statement_**

1. The plaintiff Zachary Dolby brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of his right to be free from employment discrimination based upon his disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. **_Jurisdiction_**

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about December 21, 2020 the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00548. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated June 11, 2021.

5. The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C. ***The parties***

6. The plaintiff is an adult individual who resides at 1323 New Street, Franklin, PA 16323 (Venango County).

7. The defendant, Latrobe Specialty Metals Company LLC t/d/b/a Carpenter Specialty Metals ("Carpenter" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 1680 Debence Drive, Franklin, PA 16323 (Venango County).

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. ***Factual Background***

10. The plaintiff, worked for Carpenter as a process technician from May 21, 2018 until November 5, 2020, at which time his employment was terminated.

11. Carpenter is in the business of manufacturing and distributing specialty stainless steels, titanium alloys, tool steels and super alloys.

12. The plaintiff's duties included operating machinery and materials handling.

13. The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, he has asthma, a physical impairment that substantially limits one or more of the major life activities of the plaintiff. In addition, the plaintiff has generalized anxiety and depression, a mental impairment that substantially limits one or more of the major life activities of the plaintiff.

14. The plaintiff told the company about his disability at the outset of his employment (during his pre-employment physical) and several times in the spring and summer of 2020.

15. Throughout his employment, the plaintiff was able to do all of the essential functions of his job either with no accommodations or with reasonable accommodations. The only accommodation he ever required was occasional intermittent leave when his anxiety and depression flared up. He did not require any accommodation relating to his asthma, other than to be able to use an inhaler from time to time when he experienced difficulty catching his breath.

16. In mid-March 2020, the United States (and the entire world) was in the grips of the Covid-19 pandemic. The company instituted a policy requiring employees to report any listed symptoms to the company's medical department. The medical department would make a decision whether to allow the employee to continue to work or go into a mandatory quarantine (called, "isolation"), during which the employee was required to stay at home and not report to work. Among the listed symptoms was "coughing", which happens to be a condition that the plaintiff regularly experiences due to his asthma.

17. According to the company's policy, failure to report the listed symptoms was grounds for immediate termination.

18. The policy put the company's employees in a difficult situation. Reporting symptoms, like a cough, would almost result in a mandatory two-week isolation, but management got upset if an employee was out of work for any extended periods of time due to reporting symptoms.

19. In March or April 2020, after the policy was put into place, the plaintiff experienced a bout of coughing due to his asthma. He told his managers, Cody Spence and Jim Gibson, that he coughs all the time because of asthma. However, he was directed to report it to

the company's medical department. The plaintiff was required to go into isolation, get a Covid test, and was told that he could not return to work until he got a negative result. It took a couple of weeks to get his test results back, which came back negative.

20. The plaintiff returned to work after he got the negative test result. However, in May 2020, he experienced another bout of coughing due to asthma and was required to go back into isolation for a couple of weeks. This happened yet again in June or July 2020.

21. On August 21, 2020, the plaintiff contacted Lela Marsh, Human Resources Representative, requesting a day off on August 26 so that he could attend an important doctor's appointment with his girlfriend concerning her pregnancy. She was having a lot of complications during her pregnancy and had to travel to Pittsburgh from time to time to see her doctors. Marsh told the plaintiff that his request was going to be denied because of the number of times he had been on isolation during the previous months.

22. On or about August 22, 2020, the plaintiff had another bout of coughing while at work. He again told Spence and Gibson that his asthma involved a chronic cough. They told him to report the cough to the medical department. The plaintiff did so and tried to explain that his cough was due to asthma, not Covid, but he was put back on isolation nevertheless.

23. On August 26, 2020 – the date of his girlfriend's doctor's appointment – Marsh was suspicious that the plaintiff violated the conditions of his isolation and had attended his girlfriend's doctor's appointment in person. She actually called the doctor's office to determine if the plaintiff was present. The doctor's employee, with whom Marsh spoke, refused to disclose who was at the appointment, but told her that if the plaintiff were there she would provide him with documentation. The plaintiff was not there in person; he was able to attend "virtually" via telephone video conference, so he did not get any "documentation".

24. Marsh sent the plaintiff a text message in the afternoon on August 26, requesting his documentation from the doctor's office. He responded that he did go to the office because he is on isolation and that he didn't know what kind of documentation that she was requesting.

25. On August 31, 2020, the plaintiff was cleared to return to work. However, on September 3, 2020, the plaintiff was experiencing symptoms of anxiety and depression. His doctor wanted to change his mediation and put the plaintiff on intermittent medical leave. The plaintiff submitted the necessary FMLA paperwork to do so.

26. On September 16, 2020, the plaintiff's mother tested positive for Covid-19. The plaintiff was potentially exposed, so he called the company's medical department. The plaintiff was put back on isolation and had to show two negative Covid tests before he was permitted to return.

27. By September 24, 2020, the plaintiff had been tested twice and got two negative results. However, he was not permitted to return to work because he had been experiencing stomach issues with diarrhea. The plaintiff was told that he could not return until he was completely "symptom free" for at least 48 hours. The plaintiff was required to take unpaid FMLA time.

28. On October 19, 2020, the plaintiff was finally permitted to return to work. He was still experiencing bouts of diarrhea, but the company let him come back. Unbeknownst to the plaintiff, he was permitted to return because his FMLA had been exhausted. However, the plaintiff was not notified that he was out of FMLA time.

29. Upon his return, Marsh noted, with some irritation, that the plaintiff had not worked an entire month the entire year to date. The plaintiff pointed out that it was not his fault

because he repeatedly had told his supervisors and the medical department that coughing was part of his asthmatic condition.

30.     On October 27, 2020, the plaintiff's anxiety had spiked, so he took the day off, thinking that he still had FMLA time.  Upon his return the next day was told for the first time that his FMLA was exhausted.  The plaintiff was told that the day off counted as an "occurrence" under the company's attendance policy.

31.     On November 3, 2020, there were serious concerns about the plaintiff's girlfriend's pregnancy so she was sent to the hospital in Pittsburgh.  The plaintiff took the 3rd and 4th off of work to be with his girlfriend.  These two days were counted as additional "occurrences" under the company's attendance policy.

32.     On November 5, 2020, the plaintiff clocked into work and was immediately called into a meeting with Aaron Polkembo, Plant Manager, Ron Grove, Team Leader, and Marsh.  The plaintiff was told that he was being suspended for five days pending termination for exceeding the "occurrences" policy.  The plaintiff had called human resources in September 2020 about the policy and had determined that several of the older "occurrences" had dropped off because of the length of time that had passed.  He advised Marsh that he did not have enough occurrences to justify termination.  She started talking about the fact that he had been on isolation for a greater part of the year and repeated that he had not worked a full month without having to go into isolation.  The plaintiff asked her why she was bringing up the time off due to isolation (because isolation days do not count as "occurrences" under the company's policy.  She responded, "Well, it doesn't matter, Peter [Vandersesthuizen, General Manager] doesn't want you here anymore."

33. On November 17, 2020, the plaintiff received a termination letter in the mail, indicating that he had been fired on November 5 for "continual issues with absenteeism and tardiness".

34. However, this reason was a pretext because the plaintiff did not exceed the number of "occurrences" per the company's own attendance policy and therefore, had not progressed to the termination phase thereunder. The real reason for the plaintiff's termination was on account of his disabilities. Management was irritated and frustrated with the plaintiff because he was forced (per the company's own policies) to go on isolation every time he exhibited "symptoms" like coughing despite the fact that he told management repeatedly that the coughing was due to asthma and not Covid-19. The decision to terminate his employment was not based on "occurrences", but rather because of the number of times he was forced into isolation due to his asthma.

## **FIRST CAUSE OF ACTION**

35. The plaintiff has a disability and thus is protected against discrimination under the ADA.

36. The plaintiff was qualified for his position.

37. The plaintiff was able to perform his position with or without a reasonable accommodation.

38. Despite his qualifications, the plaintiff was terminated. The reasons given for discharge were a pretext.

39. At all ties relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

40. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

41. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

42. The defendant terminated the plaintiff's employment and otherwise discriminated against him in the terms and conditions of his employment because of his disability, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: August 16, 2021